TOMPKINS v DEPARTMENT OF SOCIAL SERVICES

Docket No. 44594. Submitted January 7, 1980, at Detroit.—Decided April 24, 1980.

Shirley Tompkins (hereinafter plaintiff), a recipient of Aid to Families with Dependent Children (hereinafter ADC) purchased a home in the City of Detroit assuming an F.H.A. mortgage with monthly payments in excess of the maximum Department of Social Services (hereinafter DSS) shelter allowance. Prior to purchasing the home, plaintiff had been assured by her assistance payment worker that a request by plaintiff for excess shelter funds would be approved. At that time, excess shelter funds could be granted only after prior supervisory approval and if they were necessary to preserve the client's equity in the house. In addition, a "shelter cost verification form", filled out by the mortgage company, had to accompany the request for excess shelter funds. The mortgage company returned plaintiff's verification form some four months after the initial transaction. After receiving the complete request, the DSS supervisor returned it to the DSS worker for further investigation. It was not until six months had passed from the time of down payment that the worker resubmitted plaintiff's request to the supervisor. However, four days earlier, a new DSS regulation became effective which required 12 monthly rent payments before excess shelter funds could be granted to an applicant, thus if the new regulation were applied to plaintiff's request, she would be denied the excess funds. The DSS denied plaintiff's request based on the new regulation. The plaintiff appealed that ruling to the Wayne Circuit Court, alleging detrimental reliance and seeking lost equity, wherein Theodore Bohn, J., affirmed the DSS decision. Plaintiff appeals. *Held:*

1. A new restrictive regulation by the Department of Social Services will not be used to bar an applicant for ADC supplemental shelter funds from receiving such benefits under a prior

REFERENCES FOR POINTS IN HEADNOTES
[1] 2 Am Jur 2d, Administrative Law § 549.
[2] 79 Am Jur 2d, Welfare Laws § 108.
[3] 79 Am Jur 2d, Welfare Laws § 14.
[4] 2 Am Jur 2d, Administrative Law § 776.

regulation, even though the new regulation became effective before a final decision was made on the application, if the delay in processing the application was the primary responsibility of the Department of Social Services.

2. The Court of Claims is the proper forum for actions against the Department of Social Services for consequential damages based on detrimental reliance.

Reversed and remanded.

1. ADMINISTRATIVE LAW — APPEAL — ADMINISTRATIVE LAW JUDGE.

An administrative law judge's findings are to be given great deference by an appellate court if supported by substantial evidence on the whole record since, as the trier of fact, the administrative law judge had the opportunity to hear testimony and view the witnesses.

2. ADMINISTRATIVE LAW — SOCIAL SERVICES — REVIEW — SUBSTANTIAL EVIDENCE TEST.

The substantial evidence test applies to the review of social services cases; such test requires evidence which a reasoning mind would accept as sufficient to support a conclusion but, while consisting of more than a mere scintilla of evidence, may be somewhat less than a preponderance of the evidence.

3. ADMINISTRATIVE LAW — SOCIAL SERVICES — ADC BENEFITS — NEW REGULATIONS.

A new restrictive regulation by the Department of Social Services should not be used to bar an applicant for ADC supplemental shelter funds from receiving such benefits under a prior regulation, even though a new regulation became effective before a final decision was made on the application, if the delay in processing the application was the primary responsibility of the Department of Social Services.

4. COURTS — COURT OF CLAIMS — SOCIAL SERVICES.

The Court of Claims is the proper forum for actions against the Department of Social Services for consequential damages based on detrimental reliance (MCL 600.6419; MSA 27A.6419).

*Gregory L. Carr,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Janis Meija, Bernard Rosner,* and *Max E. Simon,* Assistants Attorney General, for defendant.

Before: R. M. Maher, P.J., and M. F. Cavanagh and Cynar, JJ.

Per Curiam. The plaintiff appeals as of right from an order issued March 21, 1979, by the Wayne County Circuit Court affirming the decision of an administrative law judge that the Michigan Department of Social Services (DSS) acted properly in denying plaintiff's request for excess shelter funds.

On October 15, 1974, Shirley Tompkins, a recipient of Aid to Families with Dependent Children (ADC), made a down payment of $1,500 for a house at 11657 Archdale in the city of Detroit, assuming an FHA mortgage of $16,000. The monthly mortgage payment was $163, while the maximum DSS shelter allowance was $110. Prior to purchasing the home, Margaret Dean, the plaintiff's assistance payment worker, had assured her that her request for shelter funds in excess of $110 would be approved due to the size of her family and because of the amount of equity in the home.

Under regulations in effect in October of 1974, excess shelter funds could be granted only after prior supervisory approval, if they were necessary to preserve the client's equity in the house. A shelter cost verification form filled out by the mortgage company had to be included with the request for excess shelter.

DSS sent a shelter verification form to Ms. Tompkin's mortgage company around November 1, 1974. The form was not returned. In early January, 1975, the plaintiff inquired about her excess shelter request, and the DSS worker gave her a verification form to take to the mortgage company. The plaintiff returned the form to the worker, but it was not properly dated. DSS contacted the mort-

gage company several times, and finally received the form on February 15, 1975.

The verification form and the request for excess shelter funds were submitted to the DSS supervisor, Mrs. Gay, on February 22, 1975. The supervisor returned the request to the DSS worker in order to determine how the plaintiff had obtained the $1,550 down payment and whether plaintiff's foster daughter had been erroneously included in the ADC grant.

It was not until April 4, 1975, that these matters were resolved and the worker resubmitted the request for excess shelter funds. However, a new regulation, effective April 1, 1975, stated that excess shelter funds could only be granted to an applicant if 12 monthly payments had already been paid. Under this standard, which was applied to the plaintiff, she was clearly ineligible for excess shelter funds until October 15, 1975. Thus, the DSS denied plaintiff's request for excess shelter funds.

The plaintiff appealed this decision to the Wayne County Circuit Court pursuant to MCL 400.37; MSA 16.437. At that time, she alleged that her detrimental reliance on promises of excess shelter funds resulted in the loss of her house. She sought relief in the amount of her lost equity. In an opinion dated March 8, 1979, the trial court affirmed the DSS decision, and an order to that effect was issued on March 21, 1979. From that decision the plaintiff appeals to this Court. We would reverse.

The issue before us is whether the administrative law judge erred in upholding the DSS denial of plaintiff's request for excess shelter funds based on the regulation which became effective on April 1, 1975.

According to *Soto v Director of the Mich Dep't of Social Services,* 73 Mich App 263, 269; 251 NW2d 292 (1977), the standard of review under the Social Welfare Act (MCL 400.1 *et seq.,* MSA 16.401 *et seq.)* is the same as the standard in § 106 of the Administrative Procedures Act, MCL 24.306; MSA 3.560(206), which provides:

"Sec. 106. (1) Except when a statute or the constitution provides for a different scope of review, the court shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following:

"(a) In violation of the constitution or a statute.

"(b) In excess of the statutory authority or jurisdiction of the agency.

"(c) Made upon unlawful procedure resulting in material prejudice to a party.

"(d) Not supported by competent, material and substantial evidence on the whole record.

"(e) Arbitrary, capricious or clearly an abuse or unwarranted exercise of discretion.

"(f) Affected by other substantial and material error of law."

Great deference is given to the findings of an administrative law judge. *Viculin v Dep't of Civil Service,* 386 Mich 375, 406; 192 NW2d 449 (1971), *Union Bank & Trust Co v First Michigan Bank & Trust Co,* 44 Mich App 83, 90; 205 NW2d 54 (1972).

The "substantial evidence test" applies to review of social services cases. This has been defined as evidence which a reasoning mind would accept as sufficient to support a conclusion. While it consists of more than a mere scintilla of evidence, it may be substantially less than a preponderance of the evidence. *Soto, supra,* 271, citing *Ginsburg v Richardson,* 436 F2d 1146 (CA 3, 1971), *cert den*

402 US 976; 91 S Ct 1680; 29 L Ed 2d 142 (1971), *reh den* 403 US 912; 91 S Ct 2213; 29 L Ed 2d 690 (1971).

Since the administrative law judge, as the trier of fact, had the opportunity to hear testimony and view the witnesses, his decision will be upheld so long as it is supported by substantial evidence on the whole record. *Timmons v Dep't of Social Services,* 89 Mich App 330, 340; 280 NW2d 515 (1979).

The administrative law judge in the instant appeal made the following findings of fact:

"1. That claimant purchased a home on October 14, 1974.

"2. That claimant came to the department and made a request for excess shelter on October 21, 1974.

"3. That the original submission to the supervisor for action on the excess shelter request was returned to straighten out the fact whether or not the stepdaughter was illegally placed on the ADC grant.

"4. When the matter was finally cleared up and the request for excess shelter was again submitted, the date being April 4, 1975, at which time new rules and regulations relating to excess shelter had gone into effect."

With no further elaboration of explanation, he concluded that the new regulation which became effective on April 1, 1975, could be applied to bar the plaintiff from receiving an excess shelter grant.

We find that the administrative law judge erred in concluding that the new regulation applied, where the delay of 5-1/2 months was in no way attributable to the plaintiff. This result is unsupportable in view of 42 USC 602(a)(10), which requires that ADC payments must be furnished with reasonable promptness to all eligible individuals. Such applications are required to be acted on

within 30 days except when the record clearly shows that the delay resulted from circumstances under the claimant's control or from some administrative or other emergency that could not reasonably be controlled by the agency. Delay cannot be justified by the agency's heavy case load. *Like v Carter,* 448 F2d 798 (CA 8, 1971), *cert den* 405 US 1045; 92 S Ct 1309; 31 L Ed 2d 588 (1972).

Some of the delay herein was caused by the failure of the mortgage company to return the verification form. However, between February 15, 1975, and April 4, 1975, the delay was caused by an investigation conducted by the DSS. The investigation was not the result of a change of circumstances, since the department was aware of these facts at the time of the initial application. It was this delay by the department which resulted in the ultimate denial of benefits due to the change in regulations which became effective 4 days prior to the ultimate decision. We find this result to be unreasonable. Plaintiff was entitled to have her application processed under the old regulation.

We therefore reverse the trial court's decision affirming the administrative law judge and remand the case to the administrative law judge to determine the amount of benefits to which plaintiff would have been entitled under the prior, less restrictive regulation.

We note that, in her appeal brief to the circuit court, the plaintiff requested relief in the amount of her lost equity in the home, based on detrimental reliance. The applicable statute, MCL 400.37; MSA 16.437, provides for an appeal to the circuit court from an administrative hearing. This statute provides that the circuit court may order that a petitioner be reimbursed for welfare assistance that was improperly denied, but does not authorize

any damage awards. Plaintiff has cited no authority which would indicate that the circuit court has jurisdiction to award consequential damage in an appeal from an administrative decision. Indeed, the decision in *Greenfield Construction Co, Inc v Dep't of State Highways,* 402 Mich 172; 261 NW2d 718 (1978), would indicate the contrary.

We therefore conclude that the Court of Claims, which has jurisdiction over actions brought against state agencies not involving agency decisions, pursuant to MCL 600.6419; MSA 27A.6419, would be the proper forum for an original suit against the department for any consequential damages based on detrimental reliance. See *Bays v Dep't of State Police,* 89 Mich App 356, 362-363; 280 NW2d 526 (1979).

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.